Andria Catalano Redcrow, Bar No. 185605
LAW OFFICE OF ANDRIA CATALANO REDCROW
701 B Street, Suite 1105
San Diego, California 92101
Tel. (619) 234-7000 Email: andriaredcrow@me.com

Attorney for Plaintiff,
Kathleen Mulligan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN MULLIGAN, an individual<br><br>Plaintiff,<br><br>v.<br><br>JENNY YANG, Chairperson of the UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION;<br><br>Defendants. | CASE NO. 15-CV-712<br><br>**COMPLAINT**<br><br>1. **RETALIATION (TITLE VII, HARASSMENT/HOSTILE WORK ENVIRONMENT)**<br>2. **RETALIATION (ADA, REHABILITATION ACT, ADAAA, HARASSMENT/HOSTILE WORK ENVIRONMENT)**<br>3. **RETALIATION *PER SE* (TITLE VII)**<br>4. **RETALIATION *PER SE* (ADA/REHABILITATION ACTION/ADAAA)**<br>5. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION (ADA, REHABILITATION ACT, AND ADAAA)**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW THE PLAINTIFF, Kathleen Mulligan, alleging against Defendants as follows:

/ / /

/ / /

/ / /

**INTRODUCTION**

1. This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages to redress the Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation against Plaintiff because of her physical disabilities and prior protected activity under Title VII (42 U.S.C. §2000e *et seq.*), the Americans with Disabilities Act (42 U.S.C. §12101 *et seq.*), the Rehabilitation Act (42 U.S.C. §791 *et seq.*), and the Americans with Disability Act Amendments Act.

2. Over the course of Ms. Mulligan's nearly 13 years of employment as an Administrative Judge at the Equal Employment Opportunity Commission ("EEOC"), Defendant repeatedly retaliated against Ms. Mulligan through unlawful harassment because of prior Title VII protected activity, creating a hostile work environment.  The actions were taken by Plaintiff's former first-line supervisor, district director, and senior executives at EEOC headquarters.

3. These same individuals retaliated against Ms. Mulligan since 2005 because of her status as a qualified individual with a disability under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Americans with Disabilities Amendment Act ("ADAAA"), and her requests for reasonable accommodation, which also constitute Protected Activity.

4. Since 2005, Ms. Mulligan has repeatedly requested reasonable accommodation for physical disabilities to enable her to perform her duties, but those requests have been repeatedly ignored, delayed or denied.

5. The hostile work environment at the Agency has included frequent derogatory remarks by Plaintiff's first-line supervisor concerning her Prior Protected Activity and her disabilities, acts of intimidation directed at Plaintiff and her coworkers, refusals to accommodate Plaintiff's disabilities, and verbal abuse, including repeatedly referring to Ms. Mulligan as an "ungrateful fucking bitch."   Ms.

Mulligan has repeatedly requested accommodations for her disabilities to enable her to perform her duties without undue pain and hardship, the majority of which have been ignored. Ms. Mulligan has been continuously punished for her Prior Protected Activity throughout her tenure as an Administrative Judge at the Los Angeles District Office of the EEOC, causing her to suffer and continue to suffer economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental and physical anguish and emotional distress.

**PARTIES**

6.   Plaintiff, Kathleen Mulligan, is a California and Illinois licensed attorney employed by the EEOC at its Los Angeles District Office as an Administrative Judge within the Hearings Unit.  Her duty station is located in the city of Los Angeles, California.   Her position is classified as GS-0905-14, Attorney Examiner, civil rights.  She is responsible for the adjudication of complaints of discrimination and reprisal brought by federal sector employees against their federal agency employers.

7.   Plaintiff has been an employee of the EEOC for over 20 years. Ms. Mulligan suffers from scoliosis, spinal stenosis, rheumatoid arthritis, and osteoarthritis affecting her joints and general autoimmune system, causing severe pain and fatigue.  Her conditions substantial restrict her ability to walk, to lift, to carry, to push, to pull, to type and file, among other major life activities as compared with the general population. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

8.   Jenny Yang is the Chairwoman of the EEOC.  The EEOC operates a District Office in Los Angeles, California within the Roybal Federal Building located at 255 East Temple Street, Los Angeles, CA, 90012.  The EEOC is a federal agency that meets the definition of "employer" under all applicable statutes.

**JURISDICTION AND VENUE**

9.   The Court has jurisdiction over this action pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, the Americans With Disabilities Act of 1990, 42 U.S.C. §12101, the Rehabilitation Act of 1973, 42 U.S.C. §791 *et seq.*, and the Americans with Disabilities Act Amendment Act of 2008, 42. U.S.C. §12101 *et seq. as amended*, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, the ADA, the Rehabilitation Act, and the ADAAA.

10.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**PROCEDURAL REQUIREMENTS/EXHAUSTION OF ADMINISTRATIVE REMEDY**

11.   Ms. Mulligan has complied with all statutory prerequisites to filing this action.

12.   Ms. Mulligan initiated contact with the Agency's Equal Employment Opportunity office on December 7, 2012, alleging that she was subjected to discrimination on the basis of disability and in reprisal for prior EEO activity pursuant to Title VII, the ADA, the Rehabilitation Act and ADAAA.

13.   On January 7, 2013, Ms. Mulligan received Notice of Right to File Formal Complaint of Discrimination.

14.   On January 22, 2013, Ms. Mulligan filed a Formal Complaint of Discrimination against Defendant Agency, the EEOC.

15.   Defendant Agency accepted the Formal Complaint for investigation on February 11, 2013, assigning the matter as EEO Case No. 2013-0009.

16.   A Report of Investigation was completed on July 23, 2013.

17.    Ms. Mulligan timely elected hearing before an administrative judge of the EEOC.

18. As Ms. Mulligan is an Administrative Judge of the EEOC who hears federal sector complaints of discrimination and reprisal, the Defendant Agency hired a third party contract lawyer to function as the administrative judge in the administrative proceedings.   However:

   a. The EEOC determined the criteria and selected the contractor lawyer to function as a "contract administrative judge;"

   b. The EEOC has exclusive control over the function and scope of the contract administrative judge's work;

   c. The EEOC controls the case assignment to the contract administrative judge;

   d. The EEOC sets the number of hours for the contract administrative judge to hear the matter;

   e. The EEOC communicates *ex parte* with the contract administrative judge concerning the cases brought by EEOC employees against the EEOC.

19. The contractor administrative judge issued an order accepting Plaintiff's request for hearing and commencing prehearing proceedings.  However, due to the denial of due process inherent in the biased hearing procedure designed by the EEOC for its own benefit, the complainant has elected to file this Complaint in federal court.

20. More than 180 days have elapsed since administrative hearing proceedings were initiated without this matter coming to hearing.

**FACTUAL ALLEGATIONS**

21. Ms. Mulligan filed an EEO Complaint pursuant to Title VII in 1999 while working in the Legal Unit in EEOC San Diego Field Office, then referred to as an Area Office, after which she was transferred to the Los Angeles Office Legal Unit.

22. From the Legal Unit, Ms. Mulligan was then detailed to serve as an Administrative Judge in the Hearings Unit.  Later, she was formally transferred to the Administrative Judge position in the Los Angeles District Office.

23. Pursuant to 29 C.F.R. §1614.109, as an administrative judge within the Hearings Unit of the EEOC, Ms. Mulligan is responsible for conducting hearings and rendering decisions in complaints of discrimination, harassment and retaliation brought by federal sector employees against their respective agency employers.

24. From the beginning of Ms. Mulligan's employment as an Administrative Judge until March 2013, Christine Siegel was the Supervisory Administrative Judge ("SAJ") of the Los Angeles District Office Hearings Unit and Ms. Mulligan's first-line supervisor, responsible for overseeing the functioning of the Hearings Unit and ensuring that all of the administrative judges under her supervision properly implement and enforce the civil rights laws of the United States through adjudication of claims under those statutes brought by federal employees against federal agencies.

25. Throughout this time period, Olophius Perry was the District Director of the EEOC Los Angeles District Office and Ms. Mulligan's second-line supervisor.

26. Nicholas Inzeo was the EEOC Director of Field Operations at EEOC headquarters, supervising Olophius Perry. Both Mr. Perry and Mr. Inzeo were Senior Executive Service employees of the EEOC.

27. In 2001, Ms. Mulligan informed then-SAJ Siegel that she suffers from scoliosis, a permanent disabling spinal condition, and had undergone spinal fusion surgery in which titanium rods were permanently inserted in her spine to alleviate symptoms and in an attempt to prevent further deformity of her spine. Beginning in 2007, unfortunately, Ms. Mulligan began to experience other spinal conditions and extreme pain.

28. In 2004, Ms. Mulligan began to suffer pain in right arm and hand, which was not immediately diagnosed correctly. Ms. Mulligan informed then-SAJ Siegel of this condition. The pain limited Ms. Mulligan's ability to use her right arm and hand.

29. In 2005, Ms. Mulligan was diagnosed with Rheumatoid Arthritis, a chronic autoimmune condition as the cause of the severe arm and hand pain. Rheumatoid arthritis is a chronic autoimmune condition expected to be permanent and having no known cure. In Ms. Mulligan's case, rheumatoid arthritis was causing severe wrist and hand pain, swelling in the joints, visible sores on her legs and extreme fatigue. Ms. Mulligan received treatment in order to alleviate the symptoms, but suffered side effects which were painful and created significant risks.

30. In 2007, Ms. Mulligan began to experience continual severe back pain that rendered her unable to walk or sit without debilitating pain, especially for extended periods. From 2007 through 2010, Ms. Mulligan attempted numerous treatments for her extreme pain, none of which were successful.

31. In January 2011, Ms. Mulligan underwent 2 in-patient back surgeries to correct and mitigate symptoms of spinal stenosis and a fractured vertebra, as well as significant nerve compression.

32. These physical conditions continuously and significantly restricted her ability to sit, stand, walk, lift, push, pull or reach as compared to the ability of the average person. Additionally, she suffered constant fatigue and pain and was subject to periodic intense flare-ups of the symptoms of rheumatoid arthritis.

33. In 2011, Ms. Mulligan was diagnosed with a torn rotator cuff and underwent correct surgery, which later proved to be unsuccessful. Ms. Mulligan continued to experience severe shoulder pain throughout 2011 through 2014, causing her to be unable to push, pull, reach, lift, file or type without severe pain.

34. In August 2014, Ms. Mulligan fractured her left elbow and on September 1, 2014, she underwent emergency surgery to repair the fracture, which resulted in residual damage of the ulnar nerve and limited use of her left arm and hand, including the inability to type because of numbness and lack of control of the small finger and ring finger of her left hand.

35. In December 2014, Ms. Mulligan had total shoulder replacement to correct the disabling deterioration of her rotator cuff since 2011. The extent of recovery to be expected is unknown at this time. Currently the use of her right arm is significantly restricted as compared to the average person.

36. Ms. Mulligan's Title VII protected activity while employed in the San Diego Field Office of the EEOC was known to then-SAJ Siegel because of Ms. Siegel's supervisory status and the transfer of a former supervisor involved in the San Diego proceedings from the San Diego Field Office to a position under SAJ Siegel's supervision in Los Angeles.

37. Shortly after Ms. Mulligan's reassignment to the Los Angeles District Office Hearing Unit, then SAJ Siegel began to express animus toward the Plaintiff for her prior Title VII protected activity, including both participation in the formal EEO processes and opposition to Title VII discrimination.

38. SAJ Siegel would regularly displayed an unprofessional ill temper, slammed doors and yelled at Ms. Mulligan, threatening her employment with statements such as, "Why don't you see if you can get another unit to take you?" SAJ Siegel's statements and conduct implied that Ms. Mulligan's Title VII activity made her an undesirable employee to the Agency.

39. SAJ Siegel continuously engaged in retaliation prohibited by Section 704 of Title VII, including making degrading and mocking statements about Ms. Mulligan's prior protected activity. Such retaliatory acts occurred behind closed doors, and in private communications, including a handwritten statement by SAJ Siegel referring to Ms. Mulligan's prior private sector employment as a partner in a large law firm as being "a pig defense lawyer."

40. SAJ Siegel's retaliatory conduct was known to and ratified by former District Director Perry and Director of Field Operations Inzeo. Both SAJ Siegel and Mr. Perry have previously been found by a contract administrative judge to have

engaged in unlawful retaliation within the Los Angeles District Office against an administrative judge who suffered from multiple sclerosis and had requested reasonable accommodations due to her disability. The written administrative hearing decision found that SAJ Siegel and Director Perry had violated the Americans with Disabilities Act prohibition against retaliation for protected activity. An award of damages was made against the EEOC. That decision was known to SAJ Siegel, Director Perry, Director Inzeo and other senior managers within the EEOC headquarters Office of Field Programs, Office of Human Resources, Office of General Counsel, Office of Federal Operations and Office of Equal Employment Opportunity. Nevertheless, Director Perry and SAJ Siegel remained in their respective positions and continued to receive performance awards and bonuses without any corrective action taken.

41.   In 2010, Ms. Mulligan engaged in Title VII activity by reporting to the Deputy Director that a clerk in the Hearings Unit was upset and concerned over what the clerk perceived to be race discrimination. Ms. Mulligan asked the Deputy Director to speak with the clerk. SAJ Siegel was out of the office at that time. Upon learning of Ms. Mulligan's Protected Activity, SAJ Siegel called Ms. Mulligan into her office, closed the door and berated her actions. SAJ Siegel stated: "You are never to talk to another manager about any kind of discrimination or harassment in this Unit. Do you understand?" This order was repeated several times before Ms. Mulligan was dismissed to return to her work.

42.   Not long thereafter, the clerk with the perception of race discrimination ceased to work at the EEOC.

43.   SAJ Siegel ignored or summarily denied Ms. Mulligan's requests for Reasonable Accommodations due to her Disabilities.

44.   In 2005 and at all times thereafter, the EEOC's reasonable accommodation policy has provided that an employee may request reasonable accommodation from

either a supervisor or manager in the employee's office, or from the Disability Program Manager at EEOC Headquarters. Any supervisor or manager receiving a request for reasonable accommodation at the local level is required to either respond at the local level or forward the request to the Disability Program Manager at Headquarters, as appropriate.

45. To the best of the Plaintiff's knowledge, information and belief, since at least 2005, the Department of Defense has provided certain office equipment, such as ergonomic keyboards and pens to all federal employees requiring such reasonable accommodations at no cost to the employee or to the federal agency employer. This program is known as CAP. CAP has provided some equipment to the Plaintiff, but there have been several instances were the accommodation needed is outside the scope of CAP and is solely the responsibility of the federal agency employer, in this instance, the EEOC.

46. Since 2005, Ms. Mulligan has made requests for reasonable accommodation to SAJ Siegel, Deputy Director Rosa Viramontes, District Director Perry, District Resource Manager Thomas Profit, and to various designated headquarters personnel.

47. The EEOC has routinely failed to engage in the required interactive process concerning these requests. The requests have been ignored, unreasonably delayed and/or rejected without discussion. The reasons for denial have included SAJ Siegel telling Ms. Mulligan: "other judges don't get that" when she requested clerical support for filing and typing and Mr. Profit telling Ms. Mulligan "we don't do that" in the context of a requested travel accommodation. In large part, Ms. Mulligan's requests for reasonable accommodation were simply ignored.

48. The EEOC has never denied that Ms. Mulligan is a qualified individual with a disability, or that any or all of her medical conditions do not meet the definition of disability within the meaning of the ADA, the Rehabilitation Act or the ADAAA.

49. The EEOC has never requested medical information or documentation which Ms. Mulligan refused or failed to provide. In general, Ms. Mulligan provided medical documentation from her treating physicians to accompany her requests for reasonable accommodation even if the EEOC did not request such information.

50. Ms. Mulligan's first request for reasonable accommodation in 2005 included an assessment of her working conditions by an occupational therapist. The assessment was completed and a written report provided to the EEOC Disability Program Manager on or about May 2005. The conclusions and recommendations of the Occupational Therapist's report were, in large part, ignored by the EEOC. The CAP program provided the "free" ergonomic office equipment, pens and an ergonomic keyboard, at no expense to the EEOC. However, the office furniture called for in the Report was beyond the purview of CAP and the EEOC did not implement those recommendations. Other recommendations calling for clerical support, schedule adjustment, travel accommodations, and removal of nonessential duties currently assigned to Ms. Mulligan were not implemented. The EEOC did not engage in any further interactive process. It ignored the Report.

51. Throughout 2005 and 2006, the EEOC refused to provide the reasonable accommodation of functional file cabinets, as identified in the Occupational Therapist Report, even though administrative judges are responsible for maintaining their own files.

52. After repeated requests to SAJ Siegel and Deputy Director Viramontes, functional filing cabinets were provided by the EEOC in 2007. The cabinets provided were identical to those that had existed and been continuously in use within the Legal Unit at the Los Angeles District Office since 2002. The EEOC had no explanation as to why it failed to allocate some of the existing furniture to Ms. Mulligan to accommodate her disability.

53. The other requests included in the 2005 Occupational Therapist Report continued to be ignored without explanation.

54. Agency did not provide an ergonomically appropriate office chair until November 2009.

55. In November 2012, Ms. Mulligan renewed her request to Disability Program Manager, Donna Walton, for ergonomically appropriate office furniture. Ms. Mulligan identified that such furniture existed in the EEOC Los Angeles District Office inventory and was in use within the Legal Unit. Neither Ms. Walton nor the EEOC offered any explanation as to why that furniture could not be utilized to provide a reasonable accommodation to Ms. Mulligan.

56. Although Ms. Walton acknowledged that Ms. Mulligan was a qualified individual with a disability, and directed Ms. Mulligan to ignore SAJ Siegel's contention that she was not disabled, Ms. Walton nonetheless failed to implement any reasonable accommodations identified in the 2012 assessment for 12 months. She alternatively responded to Complainant that the EEOC "doesn't do that," ignored the requests altogether, or claimed that she was very busy and did not have time to read and respond to Ms. Mulligan.

57. Ms. Mulligan persisted and continued to send follow up email and forwarded earlier requests to Ms. Walton. In November 2013, an ergonomically appropriate desk was provided by the EEOC. Agency gave no explanation as to why it took over eight (8) years to provide this simple accommodation.

58. Ms. Mulligan's request for clerical support for filing and typing was generally ignored until 2014, even though Ms. Mulligan was the only administrative judge in the Los Angeles District Office with a docket including active class actions. Such clerical support was only provided on a limited basis to help Plaintiff identify cases assigned to other judges which could be closed because they were subsumed in a pending class-action, whether the class-action was assigned to

Plaintiff or another administrative judge, and thereby improve the statistics on Los Angeles District Office case processing.

59.  Requests for opportunity to telework as a reasonable accommodation were not granted on the same basis as those opportunities were provided to other administrative judges with and without disabilities within the Los Angeles District Office. Other administrative judges were given permission to telework for disabilities that would have otherwise caused intermittent absences or while recuperating from medical treatment for non-disability related illnesses.

60.  In July 2011, SAJ Siegel deferred and unreasonably delayed responding to Ms. Mulligan's request to telework while recovering from surgical procedures secondary to her disabilities, forcing her to utilize sick and annual leave.

61.  Ms. Mulligan was not allowed to telework on the same basis as other administrative judges until October 2012.

62.  Requests for accommodation on official government travel pursuant to government-wide regulation and EEOC travel policy were denied by the District Resource Manager, on behalf of Director Perry, who commented, "We [the EEOC] don't do that."  This denial changed Ms. Mulligan's travel itinerary to increase the duration of time in transit, which was already 20 hours, by an additional hour.

63.  On March 29, 2013, Ms. Mulligan requested accommodations specific to the conduct of hearings, asking for assistance to carry voluminous files to the Hearings room, note taking, and escorting witnesses within the secured offices of the EEOC.  These requests were ignored.

64.  SAJ Siegel instructed Ms. Mulligan that Ms. Mulligan was forbidden from talking to any other manager about any kind of discrimination or harassment within the EEOC work environment.  The order was issued after Ms. Mulligan had gone to

the Deputy Director with an employee's concerns about perceived race and sex discrimination which the employee had disclosed to Ms. Mulligan.

65. Not long thereafter, the employee ceased to work at the EEOC Los Angeles District Office.

66. In January 2011, SAJ Siegel questioned the medical necessity of Ms. Mulligan's request for medical leave for surgery to repair a fractured vertebra, commenting, "it's just a stress fracture," and then delayed responding to Ms. Mulligan's request to telework while recuperating until the request was moot.

67. In July 2011, SAJ Siegel questioned Ms. Mulligan's request for reasonable accommodation while recovering from rotator cuff surgery, stating that because Ms. Mulligan's right arm was in a sling, she would be unable to work and therefore had to take sick or annual leave while recovering.

68. Between October 2011 and October 2012, SAJ Siegel instructed one of the Plaintiff's colleagues, Administrative Judge Lesley Troope, not to discuss reasonable accommodation with Ms. Mulligan, or to advise Ms. Mulligan that her office equipment and furniture were ergonomically incorrect.

69. Concurrent with the grant of permission to telework in October 2012, SAJ Siegel requested Ms. Mulligan assume an additional task that is not an essential function of an administrative judge. Ms. Mulligan advised that her ability to perform that task would be contingent upon her disabilities, specifically the impact of unpredictable flare-ups of rheumatoid arthritis. Ms. Mulligan provided medical documentation about her condition and medical restrictions.   SAJ Siegel was enraged that Ms. Mulligan did not agree to the increased workload unconditionally.

70. SAJ Siegel engaged in retaliation *per se* by speaking to Administrative Judge Troope not to discuss Ms. Mulligan's disabilities or participate in Protected Activity concerning any EEO Complaint brought by Ms. Mulligan.

71. In this time frame, SAJ Siegel made several statements to Ms. Troope to discourage and dissuade her from supporting anticipated EEO activity by Ms. Mulligan and to otherwise discredit Ms. Mulligan in the eyes of Ms. Troope. These statements were:

   a. That Ms. Mulligan had engaged in Prior Title VII Protected Activity and that the Prior Title VII Protected Activity lacked merit;

   b. That Ms. Mulligan's Prior Title VII Protected Activity had caused the wrongful removal of a manager;

   c. That Ms. Mulligan had allegedly lied in her Prior EEO Complaint and would lie again in any future complaint;

   d. That SAJ Siegel had reluctantly done Ms. Mulligan a favor by accepting her into the Hearing Unit despite her Prior Title VII Protected Activity;

   e. That Ms. Mulligan was going to file a frivolous Worker's Compensation claim;

   f. That Ms. Mulligan's anticipated EEO claims and worker's compensation claim would embroil the office in litigation;

   g. That Director Perry would be angry about EEO activity by an EEOC employee within his District;

   h. That Ms. Troope should not discuss EEOC issues with Ms. Mulligan because Ms. Mulligan would allegedly use and sacrifice AJ Troope to advance her own selfish agenda;

   i. That SAJ Siegel did not have a duty to provide reasonable accommodations to Ms. Mulligan because Ms. Mulligan did not have a disability.

72. In her tirades about Ms. Mulligan, SAJ Siegel repeatedly referred to Ms. Mulligan as an "ungrateful fucking bitch."

73. Ms. Mulligan had renewed her request for a technical assessment on November 14, 2012, notifying Disability Program Manager Donna Walton and SAJ Siegel, and providing medical documentation.

74. Shortly after Ms. Mulligan renewed her request for reasonable accommodation by submitting new medical documentation to Disability Program Manager Donna Walton with courtesy notice to SAJ Siegel, Ms. Mulligan had her FY 2012 performance appraisal with SAJ Siegel. In that meeting SAJ Siegel became angry with Ms. Mulligan, turned red and hissed: "I am so sick of you."

75. SAJ Siegel engaged in further retaliation after Ms. Mulligan initiated EEO proceedings in December 2012.

76. SAJ Siegel disclosed to Ms. Mulligan and Ms. Troope private medical information pertaining to other administrative judges within the Hearings Unit.

77. SAJ Siegel complained to Ms. Troope that Ms. Mulligan was ungrateful because Ms. Mulligan had received performance-based awards throughout her tenure in the Los Angeles District Office despite her Prior Protected activities.

**FIRST CLAIM**
**RETALIATION (TITLE VII)**

78. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 81, as if fully set forth herein.

79. Plaintiff believes and thereon alleges that Defendant's adverse actions were taken against her as set forth herein occurred in retaliation for plaintiff's complaint of unlawful discriminatory treatment in her employment with the Defendant and in retaliation of plaintiff's opposition to unlawful discrimination and harassment of other EEOC employees. Such actions are unlawful, discriminatory and retaliatory in violation of the Title VII of the Civil Rights Act of 1964, as amended.

80. The EEOC, has retaliated against Plaintiff for her Prior Protected Activities, subjecting Plaintiff to acts of discrimination, harassment and humiliation, failing

to provide reasonable and timely accommodations in response to her requests for reasonable accommodation, failing to promote her to GS-15 pay grade, and discouraging Plaintiff's co-workers from giving testimony or support to her claims.

81. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer lost income, promotional and career opportunities, and has suffered other economic losses in an amount to be determined at the time of trial. Plaintiff has sought to mitigate her economic damages.

82. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem, emotional pain and suffering, and physical injuries, for which she is entitled to an award of monetary damages.

83. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has incurred attorney fees and costs prosecuting her claims through the administrative and judicial processes, and is entitled to recover her attorney fees and costs as the prevailing party.

## SECOND CLAIM
## RETALIATION (ADA/REHABILITATION ACT/ADAAA)

84. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 81, as if fully set forth herein.

85. Defendant has retaliated against Plaintiff in violation of the Americans with Disabilities Act, the Rehabilitation Act and the Americans with Disabilities Act Amendments Act for complaining of Defendant's discriminatory practices against her at the Agency by, *inter alia*, denying her requests for reasonable

accommodation, unreasonably stalling and delaying the interactive process to identify and provide accommodations, and ignoring her status as a qualified individual with a disability who is eligible for and should receive all reasonable accommodations within the meaning of the statutes.

86. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, emotional pain and suffering, and physical injuries, for which she is entitled to an award of monetary damages, implementation of accommodations identified as needed but not yet provided, attorney fees and other relief.

87. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer economic losses, including lost income resulting from failure to promote to GS-15 pay grade, medical expenses for treatment, therapy and medication necessitated by exacerbation of her disabilities occasioned by the failure of reasonable accommodation.

88. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff is entitled to recover attorney fees and costs per statute as the prevailing party.

## THIRD CLAIM
## RETALIATION PER SE (TITLE VII)

89.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 81, as if fully set forth herein.

90. Defendant has engaged in retaliation *per se* against Plaintiff in violation of Title VII, by the actions of SAJ Siegel and other EEOC officials who has continuously retaliated and held Plaintiff's Prior Protected Title VII Activity against her throughout her employment within the Los Angeles District Office.

91. SAJ Siegel's repeated statements to Plaintiff and to her coworkers disparaging Plaintiff's past and future resort to the EEO Complaint process and ordering coworkers not to participate in the EEO process are *per se* violations of the civil rights statutes that the EEOC is responsible for upholding and enforcing within the United States.

92. Defendants' actions and the words of its managers have had a chilling effect upon the Plaintiff and third parties that interferes with the EEO process by attempting to intimidate Plaintiff and others from engaging in the EEO process.

93. 42 U.S.C. §2000e-3(a) expressly prohibits discrimination "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

94. The Actions of the defendant further violate the EEOC regulations that govern the duties of SAJ Siegel, the Plaintiff and her fellow administrative judges codified in 29 C.F.R. §1614.101, §1614.103, §1614.102(5). The potential of a chilling effect is sufficient to establish a *per se* violation as the EEOC implementing regulations impose a duty on the EEOC to promote EEO policies and practices.

95. As the Defendant is the designated Agency of the United States government responsible for the oversight and enforcement of all civil rights laws in both the public and private sector, the actions of its managers to deter and discourage its own employees from utilizing those laws is outrageous and offensive.

96. The EEOC especially has a continuing duty to promote the full realization of equal employment opportunity in its policies and practices. The EEOC manager must promote and enforce a vigorous equal employment opportunity program as an example to other federal agency employers and to the public at large.

97. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer lost income, promotional and career opportunities, and has suffered other economic losses in an amount to be determined at the time of trial. Plaintiff has sought to mitigate her economic damages.

98. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem, emotional pain and suffering, and physical injuries, for which she is entitled to an award of monetary damages.

99. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has incurred attorney fees and costs prosecuting her claims through the administrative and judicial processes, and is entitled to recover her attorney fees and costs as the prevailing party.

## FOURTH CLAIM
## RETALIATION PER SE (ADA)

100. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 81, as if fully set forth herein.

101. Defendant has engaged in retaliation *per se* against Plaintiff in violation of the ADA, the Rehabilitation Act, and the ADAAA, by the words and actions of SAJ Siegel, the Disability Program Managers, and other management officials who

have retaliated against Plaintiff because of her efforts to obtain a reasonable accommodation as a qualified individual with a disability.

102. SAJ Siegel's repeated statements to Plaintiff and to her coworkers disparaging Plaintiff's past and future resort to the EEO Complaint process and ordering coworkers not to participate in the EEO process are *per se* violations of the civil rights statutes that the EEOC is responsible for upholding and enforcing within the United States.

103. Defendants' actions and the words of its managers have had a chilling effect upon the Plaintiff and third parties that interferes with the EEO process by attempting to intimidate Plaintiff and others from engaging in the EEO process.

104. The Actions of the defendant further violate the EEOC regulations that govern the duties of SAJ Siegel, the Plaintiff and her fellow administrative judges codified in 29 C.F.R. §1614.101, §1614.103, §1614.102(5).  The potential of a chilling effect is sufficient to establish a *per se* violation as the EEOC implementing regulations impose a duty on the EEOC to promote EEO policies and practices.

105. As the Defendant is the designated Agency of the United States government responsible for the oversight and enforcement of all civil rights laws in both the public and private sector, the actions of its manager to deter and discourage its own employees from utilizing those laws is outrageous and offensive.

106. The EEOC especially has a continuing duty to promote the full realization of equal employment opportunity in its policies and practices.  The EEOC manager must promote and enforce a vigorous equal employment opportunity program as an example to other federal agency employers and to the public at large.

107. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem, emotional pain and suffering, and physical injuries, for which she is entitled to an award of monetary damages and implementation of accommodations identified as needed but not yet provided.

108. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer economic losses, including lost income resulting from failure to promote to GS-15 pay grade, medical expenses for treatment, therapy and medication necessitated by exacerbation of her disabilities occasioned by the failure of reasonable accommodation.

109. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff is entitled to recover attorney fees and costs per statute as the prevailing party.

## FIFTH CLAIM
## VIOLATION OF THE DUTY OF REASONABLE ACCOMMODATION
## (ADA/REHABILITATION ACT/ADAAA)

110. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 81, as if fully set forth herein.

111. Defendant violated its duty under the ADA/Rehabilitation Act and the ADAAA to provide Plaintiff with a reasonable accommodation for her disabilities (osteoarthritis, rheumatoid arthritis, scoliosis and spinal stenosis) when it unreasonably delayed and/or denied Plaintiff's requests for reasonable accommodation from 2005 through 2014.

112. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, emotional pain and suffering, and physical injuries,

for which she is entitled to an award of monetary damages and implementation of accommodations identified as needed but not yet provided.

113. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff has suffered and continues to suffer economic losses, including lost income resulting from failure to promote to GS-15 pay grade, medical expenses for treatment, therapy and medication necessitated by exacerbation of her disabilities occasioned by the failure of reasonable accommodation.

114. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, the Rehabilitation Act and the ADAAA, Plaintiff is entitled to recover attorney fees and costs per statute as the prevailing party.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

1. A declaratory judgment that the actions, conduct and practices of the Defendant complained of herein violate the laws and regulations of the United States;

2. An injunction and order permanent restraining the Defendant from engaging in such unlawful conduct;

3. An order directing Defendant to implement all identified means of reasonable accommodation on a timely basis;

4. For compensatory damages, including loss of wages, promotional opportunities, benefits and other opportunities of employment according to proof,

5. For mental and emotional distress damages;

6. For an award of interest, including prejudgment interest, at the legal rate;

7. For an award of prevailing party attorney fees and costs; and

8. Such other and further relief as the Court may deem just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 30, 2015            Law Office of Andria Catalano Redcrow


BY: /s/ Andria Catalano Redcrow
Attorney for Plaintiff, Kathleen Mulligan